IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAMONA COLLINS,

          Plaintiff,                No. CIV S-04-2432 PAN

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.           ORDER

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge).  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion for summary judgment.

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated December 19, 2003, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of musculoskeletal pain and obesity, but that these impairments do not meet or medically equal a listed impairment; plaintiff's testimony was not credible; plaintiff had the residual functional capacity to perform the physical exertion required for work, except for prolonged lifting of more than 25 pounds and occasional lifting of more than 50 pounds; plaintiff had the residual functional capacity to perform medium work; plaintiff was able to perform her past relevant

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1   work; and plaintiff is not disabled.  Administrative Transcript ("AT") 16.  Plaintiff contends that

2   the ALJ erred in his finding that plaintiff was not credible and in his failure to use a vocational

3   expert to determine plaintiff's residual functional capacity.

4   II.  Standard of Review

5            The court reviews the Commissioner's decision to determine whether (1) it is

6   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

7   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

8   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

9   Substantial evidence means more than a mere scintilla of evidence, but less than a

10  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

11  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

13  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

14  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

15  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

16  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

17  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

18  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

19  substantial evidence supports the administrative findings, or if there is conflicting evidence

20  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

21  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

22  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

23  1335, 1338 (9th Cir. 1988).

24  /////

25  /////

26  /////

3

III.  <u>Analysis</u>

     a.  <u>The ALJ Erred in his Assessment of Plaintiff's Credibility.</u>

       The ALJ found that plaintiff's subjective complaints of pain were not credible. AT 14.  In reaching this conclusion, the ALJ stated that he relied upon the objective medical evidence, as well as other non-medical factors.  <u>Id.</u>  As substantial evidence does not support the ALJ's conclusion, this finding was in error.

       The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  <u>See, e.g.</u>, <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

       In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  <u>See id.</u> at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see generally</u> SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  <u>Light v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional

1   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).    The ALJ

2   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

3   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

4   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

5   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

6   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7            The ALJ cited several factors supporting his decision to disregard plaintiff's

8   complaints of pain and injury.  In particular, the ALJ noted the distinct lack of objective medical

9   evidence confirming any diagnosis consistent with plaintiff's complaints of severe back, knee,

10  and hip pain.  AT 14.  The ALJ also found several non-medical factors, including plaintiff's daily

11  activities, undermined plaintiff's allegations.  Id.

12           As noted by the ALJ, there is little objective medical evidence to confirm

13  plaintiff's complaints regarding the severity of her pain.  Id.  A radiological examination on

14  January 9, 2002, found nothing abnormal with plaintiff's left hip.  AT 121.  A second x-ray on

15  July 31, 2002, found nothing abnormal with plaintiff's cervical spine, AT 213, in spite of her

16  complaints two weeks prior of severe back spasms, upper back, and neck pain, AT 214.

17  Examining physician Dr. O'Brien did not find any significant limitations with plaintiff and

18  determined that she was capable of frequently lifting 25 pounds and occasionally lifting 50

19  pounds.  AT 153-54.

20           While the medical evidence failed to pinpoint an acute source of injury, it was

21  consistent in its diagnosis of fibromyalgia.  AT 197, 204.  "Fibromyalgia is a form of rheumatic

22  disease with no known cause or cure.  The principal symptoms, which are entirely subjective, are

23  pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied

24  by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches."

25  Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1067 (9th

26  Cir.1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6-8 (1989)).  "The principal

1    symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots,

2    more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have

3    at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the

4    patient to flinch.   All these symptoms are easy to fake, although few applicants for disability

5    benefits may yet be aware of the specific locations that if palpated will cause the patient who

6    really has fibromyalgia to flinch." Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir.1996).

7              Discrediting a plaintiff's subjective complaints solely because of a lack of

8    objective evidence to confirm a finding of fibromyalgia is error.  Benecke v. Barnhart, 379 F.3d

9    587, 594 (9th Cir. 2004); see also Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir.

10   2003)(reversing and remanding for an award of benefits where claimant was disabled by

11   fibromyalgia).  Because the disease eludes measurement, objective evidence to confirm a

12   diagnosis may not be available.  Benecke, 379 F.3d at 594.  The disease is one of exclusion, not

13   inclusion, and is generally diagnosed only after all other options have been exhausted.

14             In this case, the ALJ's reliance on the absence of evidence was in error.  Given the

15   consistent and unequivocal conclusions of the medical experts that plaintiff suffered from

16   fibromyalgia, the lack of objective findings does not support any conclusion regarding the

17   credibility of plaintiff's complaints.  While the ALJ attempted to bolster his finding with non-

18   objective factors, it is apparent that he consistently mischaracterized or misstated the facts in the

19   record.  Consequently, it cannot be said that substantial evidence supports the ALJ's conclusion

20   that plaintiff is not credible.

21             The ALJ noted that plaintiff's activities of "doing the laundry, cooking, washing

22   the dishes, grocery shopping with her husband, cleaning her residence, caring for her two

23   children, and managing her family's household expenses" were not consistent with plaintiff's

24   complaints of disabling pain.  AT 14.  Plaintiff's ability to engage in some daily activities does

25   not compromise her subjective complaints of pain.  See Benecke, 379 F.3d at 594; Vertigan v.

26   Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)

1   (holding that one need not be "utterly incapacitated" in order to be disabled).  The ALJ's

2   mischaracterization of the extent of plaintiff's daily activities is not supported by substantial

3   weight in the record and cannot be a basis to undermine plaintiff's credibility in this case.

4            The ALJ found that, in spite of this pain, plaintiff was able to carry on an

5   "extensive" range of daily activities.  AT 14.  However, plaintiff testified that her activities were

6   limited to those necessary to care for her children, ages three and two, AT 247, and her husband

7   who required "some attention," AT 79.  In this regard, plaintiff did some housecleaning and

8   cooked meals, AT 77.  Plaintiff testified that she was only able to work 15 to 20 minutes before

9   needed to sit down and rest, AT 248, that it often took her three to four tries to complete the task

10  of washing the dishes, AT 248-49, and that she frequently required the assistance of her husband,

11  roommates, or mother to complete the job, AT 150, 249.  This limited activity can hardly be

12  considered extensive.

13           Furthermore, plaintiff's other activities to which the ALJ cites are not so extensive

14  and vibrant to provide the substantial evidence necessary to call into question her credibility.

15  Plaintiff stated that she is able to drive herself where she needed to go, making trips to the store

16  and her medical appointments.  AT 247.  However, once at the store, plaintiff was only able to

17  shop for brief periods, AT 77, required help, id., or split the duties with her husband, AT 71.

18           The ALJ appeared to rely heavily on Dr. O'Brien's notation that plaintiff had no

19  apparent difficulty walking down the hall, sitting in a chair, or getting onto and off an

20  examination table.  AT 151.  Nothing in the record indicates that these activities are inconsistent

21  with plaintiff's complaints.  Plaintiff complained of fatigue and pain after a period of activity;

22  plaintiff did not say that she could not walk down the hall or sit in a chair.

23           In addition, the ALJ's finding that plaintiff had not taken prescription pain

24  medications was incorrect.  On July 18, 2001, plaintiff reported to her doctors that Vicodin had

25  provided some relief for her pain.  AT 135.  She received a prescription on that day for a second

26  painkiller, Robaxin.  Id.  Doctors also prescribed Vicodin and Robaxin on July 17, 2002.  AT

7

1   214.  Subsequent examinations showed plaintiff was taking prescription strength ibuprofen.  AT

2   195, 204 (Motrin 800 mg), 210.

3            Finally, while the ALJ spoke only in general terms of many of plaintiff's ailments,

4   he specifically discredited her complaint that she suffers from irritable bowel syndrome (IBS)

5   and experiences three to eight bowel movements in a day.  AT 15.  However, in reaching this

6   conclusion, the ALJ incorrectly summarized the medical evidence, stating that plaintiff has never

7   been treated for IBS.  Id.  On the contrary, plaintiff testified at the hearing that she took

8   prescription medication for IBS.  AT 247.  Furthermore, plaintiff received a prescription for

9   Bentyl, a drug used to treat IBS, on September 26, 2003.  AT 204.

10           Upon proper analysis of the evidence in the record, what remains of the ALJ's

11  justifications for discrediting plaintiff is the simple fact that plaintiff's treatment record has been

12  scant.  Indeed, the medical evidence contains instances where plaintiff failed to take actions

13  consistent with someone in disabling pain.  Plaintiff missed scheduled appointments, including

14  appointments in November 2001, AT 122, and April 2002, AT 118, as well as counseling

15  sessions, AT 156.  She frequently forgot to take her medication.  AT 157.  Furthermore, plaintiff

16  resisted efforts by her doctors to lose weight, arguing that she didn't have time to exercise

17  because of the demands of her family.  AT 208.  On multiple occasions, plaintiff was referred to

18  group counseling or other lifestyle programs.  AT 129, 133, 198.  The record fails to reflect

19  whether she attended these sessions and plaintiff's statement to her Dr. O'Brien that she intended

20  to go, AT 150, made both before and after the classes were recommended, strongly indicates that

21  she did not.

22           In fact, doctors consistently recommended exercise and lifestyle changes to

23  address plaintiff's ailments, AT 197-98, 133, 204, 206, 210; however, there is no evidence

24  plaintiff followed their advice.  Plaintiff consistently smoked cigarettes.  AT 127, 151, 197, 203,

25  Despite oft repeated recommendations to lose weight, plaintiff remained at or above 236 pounds

26  throughout the period of her claimed disability.  AT 120 (greater than 260 pounds on January 9,

8

1   2002), 130 (255 pounds on September 27, 2001), 132 (254 pounds on September 6, 2001), 152

2   (245 pounds on May 31, 2002), 194 (242 pounds on July 8, 2003), 195 (243 pounds on July 23,

3   2003), 197 (242 pounds on March 31, 2003), 203 (242 pounds on February 26, 2003), 205 (242

4   pounds on January 28, 2003), 207 (236 pounds on October 9, 2002), 209 (236 pounds on August

5   9, 2002), 211 (241 pounds on July 31, 2002), 215 (247 pounds on June 2, 2002).

6           However, this single factor does not salvage the ALJ's conclusion, and cannot

7   form the basis for discrediting the plaintiff's testimony.  The numerous misstatements about and

8   mischaracterizations of the record by the ALJ cast significant doubt upon his reasoning.

9   Substantial evidence does not support his conclusion that the plaintiff's testimony is not credible.

10          As a result of his assessment of plaintiff's credibility, the ALJ gave no weight to

11  plaintiff's mental health providers.  AT 15.  According to the ALJ, because the opinion of Dr.

12  Ardalan, an examining psychologist, and the opinion of doctors with the State Agency were

13  based, in part, upon the subjective complaints of plaintiff, they could not support any conclusion

14  that plaintiff suffered from severe depression.  Id.  Consequently, the ALJ found that plaintiff's

15  depression only mildly limited her nonexertional functioning and was therefore nonsevere.  Id.

16  This finding is in error.

17          An impairment is "not severe" only if it "would have no more than a minimal

18  effect on an individual's ability to work, even if the individual's age, education, or work

19  experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify

20  claimants whose medical impairment is so slight that it is unlikely they would be disabled even if

21  age, education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S.

22  Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of

23  groundless claims."  Smolen, 80 F.3d at 1290; see also Edlund v. Massanari, 253 F.3d 1152,

24  1158 (9th Cir. 2001).  Impairments must be considered in combination in assessing severity.  20

25  C.F.R. § 404.1523.

26  /////

9

1    Plaintiff's major depressive disorder and its resulting impact on plaintiff's job

2  skills should have been considered severe by the ALJ.  See Bustamante, 262 F.3d at 956 (finding

3  plaintiff mental impairments, including deficiencies in concentration, persistence and pace,

4  severe); Edlund, 253 F.3d at 1158-1159 (citing plaintiff's uncontroverted diagnosis by examining

5  psychologist of agitated depression as basis to find a severe impairment).  The regulations define

6  non-severe impairments as those that do not significantly impact the ability to perform basic

7  work activities.  20 C.F.R. § 404.1521.  Basic work activities include, among other things, use of

8  judgment; responding appropriately to supervision, co-workers, and usual work situations; and

9  dealing with changes in a routine work setting.  Id.  As the medical evidence indicates, plaintiff is

10  limited by her depression in many of these categories.

11    Doctors with the State Agency found plaintiff to be limited in many of the areas

12  essential for work.  In their assessment, doctors determined that plaintiff was moderately limited

13  in her ability to carry out detailed instructions, maintain attention and concentration for extended

14  periods, work in coordination with or proximity to others, and to complete a normal workday or

15  week without interruption.  AT 160-61.  In addition, the State Agency found plaintiff moderately

16  limited in her ability to interact with the public, accept responsibility and criticism from

17  supervisors, and to set realistic goals or make plans independent of others.  AT 161.

18    The ALJ discredited this report because it was based solely upon the findings of

19  the examining psychiatrist, Dr. Ardalan.  The record does not support this result.  The

20  consultation request to the State Agency includes reference to plaintiff's treatment in October

21  2001.  AT 164.  At that time, doctors with Kaiser Permanente found plaintiff to be suffering from

22  major depressive disorder and prescribed Paxil and Xanax to treat her condition.  AT 123.

23    This conclusion that plaintiff suffered from major depressive disorder was

24  confirmed by Dr. Ardalan, who opined that plaintiff had moderate difficulties in maintaining

25  social functioning; concentration, persistence, and pace; and responding to changes in work

26  settings.  AT 158-59.  He also stated that plaintiff might show moderate difficulties with complex

10

1    tasks and responding appropriately to usual work situations.  Dr. Ardalan gave plaintiff a Global

2    Assessment of Functioning (GAF) score of 52.[2]

3               The ALJ did not accord any weight to the opinion of Dr. Ardalan.  AT 15.  In

4    addition to discounting his conclusions because they were based on plaintiff's subjective

5    complaints, the ALJ stated that they were not supported by objective clinical findings.  AT 15.

6    This finding was in error.

7               An ALJ may reject an uncontradicted opinion of a treating or examining medical

8    professional only for "clear and convincing" reasons.  Lester , 81 F.3d at 831.  In contrast, a

9    contradicted opinion of a treating or examining professional may be rejected for "specific and

10   legitimate" reasons.  Lester, 81 F.3d at 830.  There is no contradiction in the record that plaintiff

11   suffered from depression and other mental impairments.  The reasons provided by the ALJ to

12   discredit the findings of the examining psychiatrist are hardly legitimate, let alone clear and

13   convincing.

14              Credibility determinations do factor into evaluations of medical evidence.  Webb

15   v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin.,

16   359 F.3d 1190, 1195 (9th Cir. 2004).  When there are legitimate reasons to doubt a plaintiff's

17   complaints, the opinions upon which those complaints are based are also questionable.  See

18   Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion

19   of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and

20   limitations' may be disregarded where those complaints have been 'properly discounted.'"

21   (quoting Fair, 885 F.2d at 605)).  However, as noted above, the ALJ failed to provide a legitimate

22   basis upon which to doubt plaintiff's credibility.

23

24              [2]The Global Assessment of Functioning scale is found in the Diagnostic and Statistical
     Manual IV - Text Revision (DSM-IV-TR) ed. 2000 and is used by mental health clinicians and
25   doctors to rate the social, occupational, and psychological functioning of adults.  A score
     between 51 and 60 indicates moderate symptoms or any moderate difficulty in social,
26   occupational, or school functioning.

1    Furthermore, the record is replete with objective medical evidence of plaintiff's

2 depression that is consistent with Dr. Ardalan's diagnosis.  Plaintiff stated that she had been

3 hospitalized for psychiatric problems as early as age 13.  AT 156.  The earliest date of treatment

4 for major depression that is contained in the record is September 6, 2001, when plaintiff received

5 a prescription for the anti-depressant, Wellbutrin.  AT 133.  Medication for her mental illness

6 continued through the date of plaintiff's hearing, AT 247, and included Paxil and Xanax, AT

7 124, Neurontin, AT 203, and Elavil, AT 208.  Finally, diagnoses of depression, from multiple,

8 independent sources, appear throughout the record, AT 124, 128, 133, 203, 208, 210, 212, and

9 plaintiff's treating physician discussed the possibility that plaintiff might be disabled as a result

10 of her psychological problems, AT 131.

11    The ALJ's rationale for finding that plaintiff's mental impairments were not

12 severe is not supported by substantial evidence.  Medical evidence throughout the record

13 consistently documents plaintiff's mental impairments, including depression.  It is apparent that

14 the limitations imposed by plaintiff's depression have a significant impact on her ability to

15 perform many of the tasks essential for work. The ALJ's finding that plaintiff did not suffer from

16 the severe impairment of depression is in error.

17    Remand is necessary to permit a proper evaluation of the nature of plaintiff's

18 severe limitations.  Furthermore, where the ALJ has improperly assessed plaintiff's credibility,

19 remand is appropriate when required to enhance the record.  Harman v. Apfel, 211 F.3d 1172,

20 1178 (9th Cir. 2000).  If the record is complete, remand solely to permit the ALJ to make specific

21 findings about pain testimony is not required and plaintiff's complaints should be considered

22 true.  Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988).

23 Given the limited nature of the sequential analysis, the ALJ's findings concerning the severity of

24 plaintiff's impairments, and the medical evidence in this case, remand for the awarding of

25 benefits is not appropriate.  Harman, 211 F.3d at 1178; see also McCartney v. Massanari, 298

26 F.3d 1072, 1076-77 (9th Cir. 2002); Smolen, 80 F.3d at 1292.

1      Remand is necessary for a reevaluation in light of all of the evidence in the record.

2  This includes the taking of any additional evidence necessary to fully assess plaintiff's credibility

3  as well as her residual functional capacity in light of the true extent of her impairments.  See

4  Nguyen v. Chater, 100 F.3d 1462, 1466-67 (9th Cir. 1996).  A continuation of the sequential

5  analysis to determine if plaintiff is disabled may be warranted based upon the ALJ's findings.

6      b.  The ALJ's Failure to Consult a Vocational Expert is not at Issue at this Time.

7      The Medical-Vocational Guidelines ("the grids") are in table form.  The tables

8  present various combinations of factors the ALJ must consider at step five of the sequential

9  analysis in determining whether other work is available.  See generally Desrosiers, 846 F.2d at

10  577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age,

11  education, and work experience.  For each combination, the grids direct a finding of either

12  "disabled" or "not disabled."  Where the grids do not adequately capture the full range of

13  plaintiff's exertional and nonexertional limitations, use of a vocational expert instead of the grids

14  is required.  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell,

15  461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).

16      The ALJ did not utilize the grids or a vocational expert in determining plaintiff is

17  not disabled.  Rather, the sequential analysis ended at step four because the ALJ found plaintiff

18  could perform her past relevant work.  Consequently, use of a vocational expert was not required.

19  Upon remand to permit the properly evaluate the evidence, the use of the grids or a vocational

20  expert at step five may become necessary should the ALJ determine plaintiff cannot perform her

21  past relevant work.  Given the order to remand and the sequential analysis that may follow,

22  analysis of this issue is inappropriate at this time.

23      For the foregoing reasons, this matter will be remanded under sentence four of 42

24  U.S.C. § 405(g) for further development of the record and further findings addressing the

25  deficiencies noted above.

26      Accordingly, IT IS HEREBY ORDERED that:

1        1.  Plaintiff's motion for summary judgment is denied;

2        2.  The Commissioner's cross motion for summary judgment is denied; and

3        3.  This matter is remanded for further proceedings consistent with this order.

4    DATED: June 5, 2006.

5

6                                          _____
                                              UNITED STATES MAGISTRATE JUDGE
7

8    ggh13
     Collins.ss.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26